This is Makia Smith v. Baltimore City Police Department. Mr. Greenberg, please. Good morning, Your Honors. My name is Lawrence Greenberg, and I represented Ms. Makia Smith in the underlying case. As you know, Ms. Smith filed a 1983 action alleging violations of her civil rights as well as other state law claims in response to the multiple Baltimore City Police officers violently attacking her, destroying her cell phone because she was videotaping other officers' behavior, charging her with crimes. This issue on appeal is very simple. A trial court should only admit relevant probative testimony into evidence and exclude irrelevant and unfairly prejudicial testimony. Your Honors, I would imagine history and timing are important to all cases, but in this case, it's critical. This case, Judge Marvin Garbus had the case originally. It was assigned to him. He conducted extensive pretrial discovery hearings. He ruled on multiple issues, granted summary judgment to the defendants on certain counts, and most relevant to this appeal, he granted Ms. Smith's motion in limine excluding reference to her prior arrests. Before granting his motion in limine, the motion in limine and dismissing counts, defendants deposed all witnesses as well as the plaintiff. They knew the scope of the claims because they had the complaint. They knew the emotional aspects of the damages, and Judge Garbus was aware of all that because it was argued. Judge Garbus, being aware of the testimony of the witnesses, of the plaintiff, still granted the motion in limine. Why? Because the testimony was irrelevant, and even if, and I don't concede that it was, it was unfairly prejudicial. The problem is, two weeks before trial started, Judge Garbus, for unknown reasons, gave this trial. The trial began. The order in limine was still in effect during voir dire, during opening statements, during witness testimony, and just prior to or during the plaintiff's testimony. Counsel chose trial strategies based on all of the issues presented pretrial. However, during or right before testimony of Ms. Smith and during, Judge Motz changed his mind. He overturned the motion in limine, and I quote. Okay, which he can do. Absolutely. If, under limited circumstances, somebody opens up the door, and I will say, I'm. Oh, he can change his mind anyway, can't he? I mean, just because a judge earlier grants a motion in limine, if you're the trial judge and you're on record, and your case, the case is going up to the appellate court, I mean, at least I know when I was a trial judge, it was my name on the record, it was my name on the trial, and I took responsibility, and if I disagreed, I disagreed. Absolutely. But typically, where a witness has opened the door to previously excluded testimony or where evidence differs, and in this case, the defendants have been unable to show either the witnesses or the plaintiff herself in either of those occasions open up any door because what we're talking about is something that you learn first year in law school in your evidence class, and, you know, rules of evidence 401, 402, what's relevant and what's overly prejudicial. In this case, it was the worst, especially in light of the fact, and I know you read the transcript, what's going on in Baltimore, especially in light of the fact that this was an all-white jury. Judge Motz even stated, and I quote ... Judge Motz commented on that fact on record. Absolutely, and it was unprompted. He just out of the blue said, frankly, I wish there had ... It turned out to be, for good reasons in my judgment, but I wish there had been some African-Americans on the jury because this clearly was a racial matter. He said it. Okay, but we're not dealing with that really today. We're dealing with relevance and 403. Sure. Absolutely. And we have the limiting instruction that was given in the beginning prior to the admission of the testimony, but I don't think the record shows whether there was a limiting instruction prior to the case going to the jury. Does it? It does not, Your Honor, because there was none. There was none? There ... No. Okay. The court didn't give a limiting instruction in the jury instruction? Did not? Wait. I took your question to mean prior to trial commencing, whether any ... No, prior to the court ... Did the court, as part of its charge to the jury, or immediately before that, restate the limiting instruction and the limited purpose for which the evidence was admitted? Yes. And that quote is ... Is that in the record here? It is, Your Honor. Second time? You don't ... And I state, Judge Mott says, you don't attack somebody's credibility by an arrest and not a conviction, but I'm letting it in, not for her credibility. But why don't the limiting instructions, which were repeated several times, cure any error? Because first of all, there's all sorts of reasons for that. When we use words of credibility, we also use words of character, and in this case, you have an African-American plaintiff in Baltimore City against a racial ... Judge But you have issues, especially in light of how this was brought up. Okay, but isn't really the argument here that this was a case on who you believe? I mean, it seems to me that you've got to argue the record, and this is a friendly question. Sure. This came to be a question of, do you believe Ms. Smith, or do you believe the police officers, right? I mean, isn't that what the case was reduced to in terms of the jury's decision? Because of the widely divergent testimony regarding the events that took place. Yes. Okay, so why don't you then analyze first, if you would, within the context of how the case came to be and was presented, why this evidence was so damning from your point of view? Because everyone, just everyday experiences, when you hear that somebody has been arrested before multiple times, oh, they're a troublemaker, they deserve it. I mean, it's inescapable, the feeling, subconscious or otherwise, that you have this feeling, this person is not to be believed, and that's specifically why the rule on character evidence and prior acts is there. The throwing it out of, in that flippant way, this ain't your first rodeo. Defense counsel didn't even try to hide that this was intentionally throwing the poison pill at the jury. He wanted the jury to know, oh, this is a troublemaker, she must do this all the time. She has an ax to grind with the police. She wants money. Did defense counsel argue any of those types of themes in closing argument? I haven't, closing argument's not in the record, or at least I haven't seen it. It isn't, and I don't believe the closing argument is, but yes, he just merely commented that she, and you heard, she had been arrested before. Okay, that's all the defense attorney said in the argument. And you heard she'd been arrested before. Sure, but interestingly enough, if Judge Garbus, in his statement, well, he admitted, he understands the rule, you don't attack somebody's credibility by an arrest and not a conviction. By allowing that question in, defense counsel didn't do the next step. You see, we're arguing damages here, I'll argue. Presumably, that's why the Judge Motz allowed this. Well, it was. He warned him about opening the door if she was claiming pain and suffering, emotional distress, from arrest. So then, Judge Floyd, the next question would be, you were arrested three times, four times. You were arrested, were you ever beaten by the police in front of your two-year-old daughter? How did that impact? You see, we're not just talking about an arrest, and the, sorry. So what you're saying is, what if she had, the circumstances of her prior arrests had been totally non-traumatizing, that if she'd been arrested for shoplifting, someone greeted her at the door of the Walmart and said, you know, you didn't pay, and she said, yeah, I'm sorry, you got me. Sure. That that wouldn't be a basis for saying that she was inured to being allegedly kicked and beaten by the police. Absolutely. You start at the top, and what's relevant and what's prejudicial? And in this case, there is nothing that was, quote unquote, Judge Floyd, I think he asked, nothing opened up the door, because all along, the issues pled and the issues testified in depositions were all the same. That it was the brutal attack of her in front of her child, plus the arrest, plus the charges, all of that combined in what was called the event. All of that is what- In fact, your question to her was, had you ever had an interaction like this with an officer before? And she said no. Correct. I assume, because she had not been beaten and viciously attacked in front of her two-year-old when she'd encountered the police before. Correct. Which arguably exacerbated her fear and pain and suffering and humiliation. And I use word of offensive because I've lived this case for quite some time, but what bothers me the most is the demeaning way that this rodeo statement was thrown out. That she is, you know what I equate it to? In a rape case, we know you cannot ask a victim, have you ever been raped before? That's exactly what he did here. He tried to put Ms. Smith on trial because why? Because she had been arrested before in a Walmart, I mean, she wasn't, but you know, it's irrelevant what it was for because she was never convicted. But you know, the whole thing about the rodeo, I mean, it just is an extreme lack of professionalism. And I agree with you, it's just, it's borderline pathetic for a lawyer to do that in the presence of a jury in a court. But that's not our issue here. It, well. It really isn't. It is because this goes to show the prejudice and it goes to show there wasn't harmless error. And when you take all these facts and you add them together, that's. But the impact, I'm cutting you off and I apologize, the impact though regarding harmlessness. Right. If you could say that, is that how can any jury get beyond the fact of her being a troublemaker in the past arrest state? That's your point. You cannot unring a bell. And that's why when it comes to harmless error, I mean, professionally, I could say, oh, I could have lawdeered the jury if I knew he was going to do it. But I didn't. Defense counsel was very, I can't use the word clever because I'm not pleased with the conduct professional way that this occurred. But Judge Garbus knew all of these facts at 100% before the trial even began, before he rolled on a motion in limine. And that order stood. So when I walked before a jury and gave an opening statement, it was knowing full well of what I was facing. And then all of a sudden for admitting you don't attack somebody's credibility by an arrest and not a conviction, but I'm letting it in without any further explanation. You cannot unring that bell. The jury has heard the troublemaker she is, not, but what the defense wants them to believe. And when the judge says this is a race issue, it is a race issue and Baltimore has been plagued with it. But I will tell you, the three steps for harmless error, and I know I'm trying to rush, but was the case close? Was the issues central to the case and were effective steps taken to mitigate the error? Was this a closed case? Absolutely. Every, even the officers were caught with misstatements and the testimony that came out. Smith presented, Ms. Smith presented ample evidence to support her version of the events. And I read the defendant's brief and I'm running out of time, but, and I'll save it for a rebuttal. But the truth is, is that even the statements contained in the Apolyse brief are misstatements of facts. And that's regarding when certain events took place and were certain people videotaping. If you read the transcript that's been given you, you can see very clearly when the facts occurred. Did it become central as Judge Keenan, as you mentioned, you can't unring that bell. It becomes the central issue. You look at the character of the person, character, yes, it goes to credibility. You can tell somebody disbelieve, I'm sorry, don't take it for credibility, but there was nothing that she lied about. There was nothing about it. You just said this person has been arrested multiple times before with no further inquiry into the nature of the arrest. And why? Because you're not supposed to do that. Also, the court said that common sense, I'm sorry, common sense tells us that clearly people are less trusting of people who have been arrested. And that's all defense counsel wanted to do with the rodeo line and wanted to do with getting it out in front of them. That's my time, Your Honor. Your Honors. All right, sir. Thank you. We'll hear from Ms. Sangree. Good morning, Your Honor. Suzanne Sangree representing Baltimore City Police Department et al. The jury ruled against Tappellant and found no liability on any of her counts. The question before this court is whether to overturn the jury verdict because Judge concerning the fact that she had been arrested three times prior when she had presented extensive evidence that this sole arrest had caused her severe pain and suffering. Judge Motz was correct in that evidentiary ruling. The fact of prior arrest was directly relevant to damages. He made it clear in his limiting instruction. It was relevant because she was claiming through her mother who testified before she did and then through her own testimony that she was severely depressed following this arrest, that she used to trust police, she no longer did, she couldn't eat, she lost weight, she lost sleep, extensive emotional damage. And it was more or less probable that this one arrest would cause her to suddenly distrust police if you knew that she was assaulted. Well, that was part of the evidence before the jury that the jury was evaluating. Were normal. She did. She had no problems. She had no issues. She didn't, you know, she respected the police. She didn't have these fears for the prior three arrests because they weren't assaulted abusive arrests. That's what she claims. And the jury made a determination about whether to believe her or not. And in fact, on cross-examination, defense counsel only asked. Did you claim differently? Did the police abuse her three times before too? No, I'm not claiming that. I'm not claiming that. How are they relevant? How are her prior arrests relevant? They're relevant because she's claiming the severe damage from the mere fact of being beaten and harassed and treated in an unprofessional manner in a traumatizing manner in front of her two-year-old child. That's the gravamen of her complaint. So I'll address her claims that it was an unreasonably violent arrest. Well, let's make it simpler. The jury? Make it simpler than that. Yeah. 404B1 control. It uses words to prove motive, opportunity, intent, preparation, plan, knowledge, identity, and absence of mistake or lack of action. Which one of those words controls the prior arrest testimony? Well, 404B says that evidence of prior bad acts is admissible unless it's offered to prove character and propensity to claim conformity with the character. That's not why Judge Motz allowed the fact that she had been arrested before to be admitted. But isn't that the obvious thing that the jury would take from her? This lady's a loser. No, it's not. I mean, all she does is spend her time getting arrested. How are we supposed to believe her? Isn't that the obvious takeaway from that? I respectfully disagree, Your Honor. She had been arrested. All that came out on cross was the fact that she had been arrested three prior times, and the judge had given an appropriate limiting instruction. And he said, this ain't your first rodeo. That was a very poor way of asking her whether she had been arrested before. She didn't answer that question. That was a complicated way of telegraphing to the jury that she was a troublemaker. No, it wasn't, Your Honor. It was just a way to elicit testimony that she had given in her deposition that she had been arrested two or three times before. He asked her in her deposition whether this was her first rodeo. Is that how she was asked in her deposition? Yes. He used that same phrase. And she did not answer that question when she was testifying at trial. He then clarified, you've been arrested before, and she said, yes. He said, in fact, two or three times. He didn't answer because there was an objection, and then he had to correct himself to limit to arrest. Yes. And then she acknowledged that she had been arrested two or three times before. And the fact that she had been placed in handcuffs, put locked into a prisoner transport van, driven to centralized booking and intake, the central jail in downtown Baltimore, processed into that jail and held overnight, that this was not the first time she'd had this experience, but it was indeed the fourth time. But that was the gravitation of her complaint. It was that without cause she was physically assaulted. Okay. And she, by her own testimony, it's not a question of did the jury believe her or believe the officer. It's a question of did the jury believe her concerning liability but then discount her claim of damages? Oh, come on. And did the jury – Do you really think the jury is drawing that distinction? No. When they're told up front that this lady's a troublemaker? Absolutely. The jury heard only that she had been arrested three times before on cross. It was her counsel who decided on redirect to elicit the facts that she had been arrested twice prior for assault because she was fighting and once prior because she had refused a lawful order by an officer to pull her car over. What about the underlying policy here that anybody who's been arrested more than once, for whatever reason, with no incident, when the police ultimately allegedly engage in excessive force, then all of that can come in. Isn't that telling the police that they – subtly telling the police they have carte blanche if this person's been arrested multiple times? Absolutely not, Your Honor. She testified herself that on rush hour Friday afternoon on Harford Road – this is one of the main south to north exits from the city – when there's only one travel lane going north because their police car is parked in the other travel lane, that she stopped her car in the middle of that one travel lane, took her keys out of the ignition, stepped out of her car, and blocked traffic. And when the officer – For the arrest. Yes. There was probable cause to arrest. And she acknowledged that herself on her direct testimony. It wasn't just a matter of believing the officer. She also acknowledged that she disobeyed a lawful order that Officer Church gave her to get back in her car and move it forward and park it along the curb. That's a credibility thing. But it is a credibility issue as – because they do tell two completely different stories as to how the arrest was actually effectuated. I disagree, Your Honor. She testifies herself that she jumped when Officer Church then approached her and told her, this is now a traffic stop. I need to see your driver's registration. I mean, this is his testimony that he then said, I need to see your driver's license and registration. She acknowledged on her testimony she jumped back in her car and was flailing at him and fighting him off. And the jury saw photographs of Officer Church's face that had a bruise and scratch and also of his arm, which had a scratch, which she acknowledged herself. She had inflicted on him. So she acknowledged – Because of what he had done to her, not that she had done that of her own accord without being touched by the officer. She was claiming defensively inflicted injury, isn't she? No. She acknowledged that she disobeyed a lawful order to move the car. Right, right. No, but I don't think you're being – He had probable cause to arrest. And then she acknowledged that she tried to fight him off when he was effectuating that arrest. She was coming toward the vehicle like the Incredible Hulk, like Manny Pacquiao, in an aggressive manner and said, you want to film things, bitch, film this, I should knock your teeth out. That's what she testified about. That's why she was flailing. She also acknowledged that she got back in her car at that point and she was flailing at him. You don't respond to an officer who has probable cause to arrest you by fighting them off and flailing them. That's not – So she got what she deserved. No, she didn't get what she deserved. But the officer – What you're doing here, at least from my perspective, is evading the legal issue we have in front of us. Why didn't this become a matter of character in the jury's eyes, a matter of – the case, no question, was close. Somebody was lying and somebody was telling the truth, okay? Did the officer say those offensive words to her, call her a bitch, tell her that he should knock her teeth out? Did he say those or didn't he? Somebody was lying and somebody was telling the truth. So credibility was the entire case, just about. Why didn't this necessarily put her character on trial in violation of the rules? Because Judge Motz was clear in his limiting instruction to the jury that the fact of how many times she had been arrested before was being admitted only as to damages. It was not to be used by the jury to judge her credibility as to liability. And appellant in her opening brief on page 12 now tries to object to the limiting instruction and say that it should have mentioned you couldn't use this to judge her character, but there was no objection during the trial, and so she has waived that argument. She didn't offer – I just wanted to be clear because I wasn't before. Did the district court judge give the same limiting instruction in the charge to the jury before they went in to deliberate? And I neglected to review the charge to the jury on that point, so I can't answer that question to you. Well, back to my question that you didn't answer a while ago. What reason did he let the evidence in? Was it promoting, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of access? Those are the buzzwords for letting evidence in under 404B1. So which one of those buzzwords fits your scenario? Okay, and I would direct your attention, Your Honor, to U.S. v. Queen, which says that Rule 404B is actually an inclusionary rule and that the listing of those items of when you can admit prior acts is not exhaustive, that there are other reasons that it could be admitted. And here Judge Motz made it clear he was admitting this testimony because the mother had testified, as well as appellant, had testified that she had suffered severe emotional damage from this arrest. Well, he told the lawyers that, but what reason did he give the jury? He gave the jury, and I can read to you his limiting instruction if you would like to hear that, and it's at page 134 of the joint appendix. He said, if Ms. Smith was arrested and the charges were dismissed, which is, I think, what happened, you can't use an arrest, and it's essential that you understand that. You cannot use the mere fact of an arrest to judge the appellant's credibility. That is absolutely essential. Rightly or wrongly, having heard the testimony, I think that since appellant says this has had such an effect on her, that the fact of the arrest may be relevant to the amount of damages, if any, that she suffered. So that I'm letting it in. So he made it clear that it was being let in for the limited purpose of assessing her damages if there were any. There was no objection to the limiting instruction, and at the end of the cross, all the jury knew is she'd been arrested three times before. They didn't know. Can this kind of situation be cured by a limiting instruction? I mean, I think that's essentially what Mr. Greenberg's argument is. He's saying it can't be cured. And I think U.S. v. Queens says the presumption is the limiting instruction does cure any prejudice, and the only evidence that came out on cross was the number of arrests. It was her counsel who made the trial strategy decision to bring out the fact that she had been arrested twice before for assault and fighting and for disobeying an order. That was the prejudicial. Those were the prejudicial. Yes. He couldn't just leave it laying there that she'd been arrested before without explaining it. He could very well have done that. Right. He could have thought she'd been tried for murder three times. And her counsel was very careful on direct to say, have you ever had an interaction like this with the police before, like this? She hadn't, so she said no. That's true, and the jury heard all of that, and the jury heard that and then got into the arrest. So assuming it's error, assuming we think it's error, is your argument that it's harmless because of the limited instructions, it was only the damages, is there any other reason that it was harmless? The other reason is that there was substantial evidence in the record to support the fact that there was probable cause to arrest her. That was from her own testimony, that she had disobeyed the order when she was obstructing traffic, and from her bystander witness, Ms. Trezette Kennedy, who was two cars behind her and blocked by her car when she stopped in the middle of Hartford Road. Ms. Appellant said she couldn't move her car and obey the order of police to move it forward and park on the side because it was stop-and-go traffic, but Ms. Kennedy said that she was able to pull around the left of Appellant and go three cars up and park on the side of the road the way Officer Church was ordering Appellant to do. So she herself, the testimony that she presented on her direct contradicted what she was claiming to be the events of the day. So the jury had to believe her witness. And in addition, then, she testified that she had resisted this lawful arrest by flailing, kicking, and the jury saw the evidence of her flailing and kicking the officer in the photographs of him, as well as hearing his testimony in her direct case about the events of the day. So there is overwhelming evidence to support the jury's verdict. Minimal prejudice, which was corrected and presumed to be- How can you say there's minimal prejudice in this case? I mean, really? Well, I think the mere fact of the arrest was minimal prejudice, bringing out what the underlying facts were that occasioned those prior arrests. That was more damaging. But that Appellant has waived her objection because her attorney is the one who brought that evidence out before the jury. Anything further? No, nothing further. Thank you. Thank you very much. Your Honors, McKea Smith did nothing but attempt to perform her civic duty. She saw police beating a child. She took her phone out. She was stopped in traffic. Why? Because- Say, that's not the issue either. We're not retrying the case, and we're not a jury. Absolutely not. It goes to why this came in. It goes to this was not solely an arrest. Did you object to the nature of the limiting instruction? Your Honor, I objected before, during, and after. Specifically when the limiting instruction came, I did not object. But the horse was already out of the barn, and there is no limiting instruction that could have cured this evil. The way, the manner it occurred, the rodeo statement, without any further question from the defendant, and I understand Ms. Sangree, her statements regarding the arrest. The arrest, this isn't an arrest. It's the entire incident of being charged at like the Incredible Hawk, taking your phone, you know, destroying any evidence, in front of your daughter, reaching in a car and beating you. You are allowed to resist an unlawful arrest. Not once did defense counsel ask if she was ever beaten in a prior arrest. Not once did he ask if, you know, she was ever arrested in front of her child or beaten in front of her child. No questions regarding the prior arrest were asked from the defendant. Why? Because they had already done the damage they wanted to inflict, and that is, this ain't your first rodeo, you miserable piece of you-know-what. They, that's what they want the jury to feel. Limiting instruction or not, that's what happened. This was a calculated way to embarrass and diminish the credibility and character of, that they got. The defendants got what they wanted because they made the jury a spoon-fed them that rodeo line. Your Honors, this court admitted irrelevant, highly prejudicial evidence, and it was too late for the plaintiff to do anything about it. They abused its discretion, or court's discretion, caused irreparable damage. This was not harmless error. We are requesting that the court reverse and remand for a new trial. If you have any questions, I will answer. If not, I thank you very much. Okay, thank you very much, Mr. Greenberg. We'll ask the clerk to close court.
judges: Barbara Milano Keenan, Henry F. Floyd, Stephanie D. Thacker